Argued and submitted December 22, 1987, reversed and remanded February 8, 1989

# STATE OF OREGON,
## *Appellant,*

*v.*

# WAYNE CARTER ANDERSON,
## *Respondent.*

(C86-07-33486; CA A43113)

768 P2d 427

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

No appearance for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant was charged with delivery and possession of a controlled substance. ORS 475.992. The state appeals from an order allowing defendant's motion to suppress statements that he made during interrogation while he was detained. The detention and interrogation occurred during the execution of a search warrant. The sole issue is the validity of the detention.[1] We reverse.

The police executed a search warrant at a suspected "drug house." They battered their way into the house and found that it was heavily fortified inside and out. A steel gate secured an inner door that separated the back entry from the rest of the house. The windows on the lower floor were covered with plywood and fortified with iron bars. Within one minute, the police rounded up five people whom they handcuffed and placed in a bedroom on the second floor of the house. One of the people had attempted to flee, and another was found flushing drugs and money down the toilet. The police found defendant asleep in a bedroom on the second floor, clad only in his underwear. Fourteen police officers were present at the scene. Two or three stood guard outside, one guarded the five people in the bedroom, another interviewed each of them in turn, and others searched the house. The officer interviewed defendant last. Defendant was detained in handcuffs for 45 minutes.

The court held that the officers had a valid search warrant and that their entry into the house under the search warrant was lawful. It found that the officer who handcuffed defendant did so because it was "standard operating procedure" in executing a search warrant on a drug house. The court also found that the state had not articulated facts to show that defendant individually represented a threat and held that, when he handcuffed defendant, the officer did not have probable cause to believe that defendant was guilty of frequenting a place where controlled substances are used. ORS 167.222. The court's holding is a legal conclusion, not an historical fact, and, therefore, is not binding on us. *State v. Warner,* 284 Or 147, 158, 585 P2d 681 (1978).

---

[1] This case was briefed and argued on what appears to be a "fruit of the poisonous tree" analysis, that is, that defendant's statements must be suppressed if they resulted from the exploitation of an illegal arrest. The state responds only to that argument.

The state argues that the police had probable cause to arrest defendant for frequenting a place where controlled substances are used when they first found him on the second floor, because the house was heavily fortified and because defendant was found in his underwear in the bedroom. The state contends that the police could infer from those facts that the house was a drug house, not just a residence, and that defendant had more connection to the house than mere presence.

ORS 167.222(1) provides:

"A person commits the offense of frequenting a place where controlled substances are used if the person keeps, maintains, frequents, or remains at a place, while knowingly permitting persons to use controlled substances in such place or to keep or sell them in violation of ORS 475.005 to 475.285, 475.940 to 475.965 and 475.991 to 475.995."

The question is whether the officer had probable cause to arrest defendant when he detained and handcuffed him. Probable cause means

"that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11).

The police could infer from defendant's presence on the second floor of the house in his underwear that he "frequented" the house or "remained" in it. Moreover, the officer knew that the house was heavily fortified. From the facts stated in the affidavit supporting the search warrant, he knew that drugs had been sold in the house. He also knew that another person was found flushing drugs down the toilet on the first floor, while defendant slept upstairs. We conclude that those facts constituted "a substantial objective basis for believing that" defendant remained in the house and permitted drug use on the premises within the meaning of ORS 167.222. *See State v. Pyritz,* 90 Or App 601, 752 P2d 1310 (1988). The court erred when it held that the officer did not have probable cause to arrest defendant.[2]

Reversed and remanded.

---

[2] Because of our disposition of the case, we do not decide whether the police also had probable cause to arrest defendant for possession of a controlled substance or delivery of a controlled substance.